UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARELL L. FIELDS

    Plaintiff,

    V.,

PRESTON G. CHATMON,
AND THE CITY OF LAKELAND
POLICE DEPARTMENT,

    Defendants.

Case No. 8:25cv843-KKM-NHA

APR 4 2025 PM4:01
FILED - USDC - FLMD - TPA

JURY DEMANED

---

## COMPLAINT

---

Comes now the Plaintiff, DARELL FIELDS, the undersigned Prose for this complaint against the Defendant(s), states the following:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by the Constitution of the United States of America.

2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3), because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourth Amendment to the Constitution of the United States of America.

3. Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988,

72030
TPA

1

which authorizes the award of attorney's fees and costs. prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

4. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2), because one or more defendants reside in this judicial district. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

5. Darell Fields is an adult resident of Polk County, Florida.

6. Defendant(s) Officer Preston G. Chatmon is a resident of Lakeland, Florida, in Polk County.

7. Defendant(s) City of Lakeland, Florida is a division of the State of Florida, in Polk County, and the employer of Defendant(s), Officer Preston G. Chatmon

## FACTUAL ALLEGATIONS

8. On Friday May 14, 2021, at approximately 2:15 a.m. Plaintiff Fields had a weeks' vacation and was headed back to work, as a long distant semi-truck operator of 48 states, for Stevens Transport of Dallas Texas.

9. In route to his/my work truck, he/I decided to stop, and leave my contact information inquiring about one of two Semi truck plaintiff liked, and went over to see if it was for sale, because, there were other vehicles for sale in that same lot.

10. Plaintiff stopped, and placed contact information on one Semi Truck, driver side mirror.

11. Plaintiff walked back to his/my vehicle, and drove off, turned left, and went to the stop sign. Afterward to headed in the direction of Salem's Eats Restaurant.

2

12. As plaintiff was leaving the stop sign, a bright spot light was shined on plaintiff's vehicle, no red, and blue emergency lights were ever activated, just a spot light.

13. Plaintiff stopped his vehicle, and someone, walked up from the rear, to the right side of plaintiff's vehicle.

14. The person did not announce himself, as being a police officer, neither did he state a reason for confronting plaintiff, however he asked for insurance and registration.

15. Police Report Sworn Affidavit at Pg. 1, paragraph 1, confirmed him as the officer. Police Report Sworn Affidavit Pg. 1-A, paragraph-11, confirms that defendant Chatmon was the same person that approached plaintiff without reasonable suspicion. See:

See: Attachment # 1, Pg. 1-A. paragraph 11. Police Report Sworn Affidavit

16. Defendant was unprofessional, and plaintiff believe he didn't follow policy, when he failed to give his name, badge number to identify himself as a Police officer, and from which agency.

17. Plaintiff stopped his vehicle due the bright blinding light shining on his/my vehicle, and not that this was a traffic stop, plaintiff did not know what it was, because no siren, or red and blue emergence lights, were ever activated.

See: Deposition Transcript October 1, 2021 Pg. 8 line 23-25)

18. However, during the first encounter plaintiff had to guess if the spot light came from a police vehicle, or if it was a prank, or car-jacking.

19. Plaintiff assumed it was a police vehicle, but not sure, the initial contact caused plaintiff to begin phone recording immediately.

See: Deposition Transcript October 1, 2021 Pg. 8 Line 17-23

3

20. Defendant Officer Chatmon's action was intimidating, he approached unannounced in an area that was not well lit, and he deliberately shined a blinding spotlight on plaintiff's vehicle from behind with no reasonable suspicion, or probable cause.

21. Officer Chatmon did not see plaintiff's face, because he came up from behind on the right passenger side of the vehicle, by the right rear wheel.

(See: Deposition Transcript October 1, 2021 Pg. 8 line 17- 23)

22. Defendant Chatmon's, initial encounter, he did not accuse plaintiff of committing a crime, or a traffic infraction, because there was neither. *(Gram v. Connor, 490 U.S. 386(1989).*

23. Defendant Chatmon wrote in his Police Department Affidavit that plaintiff committed the offense(s) of Fleeing and Attempted to Elude, Reckless-High Speed, and Resist Officer without violence, that was false. *(Gram v. Connor, 490 U.S. 386(1989).*

See: Deposition Transcript October 1, 2021, Pg. 6 Line 5-12.

24. Defendant Chatmon, fraudulent allegation, on the Police Report Sworn Affidavit that he had pursued plaintiff in a high-speed chase when in fact he had not.  FL. Stat. 837.06

25. Plaintiff could not have known that an officer was allegedly pursuing him, or not when the officer intentionally, and negligently failed to activate his siren, and/or red and blues. *(Gram v. Connor, 490 U.S. 386(1989).*

See: Police Report Sworn Affidavit Attachment # 1, Pg. 1

paragraph 1-7 no emergency lights activated.

26. Defendant Chatmon wanted plaintiff's insurance and registration, but he failed to give plaintiff a reason, why he was asking for the items without, probable cause.

4

27. Plaintiff, had not done anything wrong, but left contact information on a parked truck, and drove off, no other transaction took place regarding the parked truck.

28. Plaintiff asked the Officer, what was his reason for being at my car, and the officer said give me your registration and insurance, and I asked what is your probable cause for being at my car, and he failed to answer.

29. Defendant Chatmon had no cause for approaching plaintiff, and failed to answer plaintiff's question, plaintiff told the officer, you are breaking the law, for not telling me what you think I have done wrong. (*FL. V. Royer, 460 U.S. 491,498 1993*)

30. Defendant Chatmon, days later after he arrested plaintiff, he wrote a false report accusing plaintiff of reckless speeding, fact are the defendant did not know the speed limit, he didn't know if the speed limit was 35 mph, or 45 mph, on Memorial Blvd.

(See: Deposition Transcript October 1, 2021 Pg. 6 line 5-10)

(See: Deposition Transcript October 1, 2021 Pg. 8 line 25)

31. Defendant Chatmon's emergency lights red and blues, were not activated see Attachment # 1, in the Police Report Affidavit Page 1, paragraph 1-7, no lights were mentioned as being activated until pg. 1, and paragraph eight. *(Gram v. Connor, 490 U.S. 386(1989).*

32. Defendant(s) Chatmon stated at paragraph 8 that he activated his lights, after stating that he was engaged in a high-speed chase, on Memorial Blvd, without his ER lights, being activated, however, Plaintiff was not involved in his pursuit.

(See: Attachment # 1, Police Report Sworn Affidavit Pg. #1, paragraph # 8

33. Defendant Chatmon was deposed, during his deposition, the Officer now states, that he was not in his assigned vehicle, that he had previously stated that he had pursued

plaintiff Fields, Plaintiff do not know what the assigned vehicle's camera may have captured, or not.

(See: Deposition Transcript October 1, 2021 Pg. 7, line 9-22)

(See: Deposition Transcript October 1, 2021 Pg. 9 Line 1-5).

34.  Plaintiff told the officer if you can't tell me what I've done wrong we don't have anything further to talk about, and you have a good night, sir (*FL. V. Royer, 460 U.S. 491,498 1993*).

35. Defendant Chatmon never instructed Plaintiff to turn off his vehicle, and plaintiff was not detained.

36.  Defendant Chatmon had no reasonable suspicion or probable cause, for an alleged traffic stop, that's why he backed out from plaintiff's vehicle initially, and allowed plaintiff to drive off. (*FL. V. Royer, 460 U.S. 491,498 1993*)

(See: Deposition Transcript, October 1, 2021 Pg. 8 Line 25)

(See: Deposition Transcript, October 1, 2021 Pg. 11 Line 2-9)

37.  Defendant Chatmon lied, on his Police Report Sworn Affidavit pg. 1-A paragraph 9 officer Chatmon said Plaintiff, "As he sped away, he almost ran my right foot over, had I not quickly reacted by jumping out of the way". (*United States v. foster 634 F. 3d 243, 248(4th Cir. 2011)*)

38.  Officer Chatmon lied on an official document, Police Report Sworn Affidavit, FL. Statute 837. (06), that Plaintiff Fields attempted a battery on a law enforcement officer, in order to create probable cause. (*Gram v. Connor, 490 U.S. 386(1989). (FL. Statute 837.02*)

39.  However, the State Attorney could not charge plaintiff, because plaintiff did not attempt an assault on officer Chatmon. FL. Statute 837.02

6

(See: Attachment # 1 Police Report Affidavit Pg. 1-A paragraph 9)

The State Attorney Charging Document has two charges only). There was no charge mentioning an assault on an officer.

(1). Fleeing or Attempting Flee to Allude.

(2). Resisting Officer Without Violence.

See: Attachment # 39 and 39-A.

40. Plaintiff asked the officer if he was being detained, and the officer did not answer, plaintiff did not assume the officer was trying to get plaintiff to create his probable cause, that he didn't have.

41. Plaintiff drove off from the first encounter, involving the officer, and was headed towards Salem's eats, and to my/his work truck. Plaintiff made it almost to Salems' Eats.

See: Deposition Transcript October 1, 2021, Pg. 15, Line 9- 14.

Pg. 15, Line 19.

See: Deposition Transcript October 1, 2021, Pg. 16, line 1-15

42. Plaintiff continued filming phone video evidence of defendant Chatmon to show harassment, profiling, discriminating, eventual violent acts, an unlawful arrest, and willful police misconduct. *(Gram v. Connor, 490 U.S. 386(1989).*

(See: Deposition Transcript October 1, 2021 pg. 8 line 17-25)

43. Plaintiff, saw a Police K-9 vehicle, Plaintiff pulled into the center of Florida Ave., from Memorial Blvd., where there was more light while still filming video evidence.

44. Defendant's second encounter, Plaintiff was still unsure, what? was going on, decided to get out of his vehicle, hands raised in the air, because nothing had happened before the encounter, and nothing happened between the two encounters.

7

(See: attachment # 1 Police Report Sworn Affidavit Pg. 1-A paragraph 10).

45. Defendant Chatmon, pulled up to plaintiff's vehicle again for the second time, this time it was on Florida avenue near Memorial Blvd., from Salem Eats Restaurant. *(FL. v. Royer, 460 U.S. 491,498 1993); (United States v. foster 634 F. 3d 243, 248(4ʰ Cir. 2011)*

46. Defendant, Police officer Chatmon, got out of his vehicle, aiming/pointing his service weapon/Gun at plaintiff, without saying anything, just pointing his Gun, and walking towards plaintiff, who stood near the back of his vehicle, *(FL. V. Royer, 460 U.S. 491,498 1993): (Gram v. Connor, 490 U.S. 386(1989).*

See: attach # 1, Police Report Sworn Affidavit, pg. 1-A paragraph 10

47. Defendant Chatmon falsely stated that, Plaintiff started walking toward him which is totally false, he was pointing a loaded gun, false imprisoning plaintiff who was not free to leave, and was the under threat of deadly force, without probable cause. *(Gram v. Connor, 490 U.S. 386(1989).*

See: attach # 1, Police Report Sworn Affidavit, pg. 1-A paragraph 11.

48. Plaintiff asked defendant Chatmon, why are you pointing a loaded gun at me, when you can see, all I have is a phone in my hand. *(Gram v. Connor, 490 U.S. 386(1989).*

See: Attachment # 1, Pg. 1-A, Paragraph 10, Police Report Sworn Affidavit

49. Defendant Chatmon was still enraged with his weapon, and said, "you are not going to comply", *United States v. Foster 634 F. 3d 243 (4ʰ Cir. 2011),* and Plaintiff said, comply to what?

50. Defendant threatened to sic his K-9 dog on plaintiff, Defendant Chatmon said "I will sic my dog on your ass", plaintiff said why? when I'm not running.

51. Defendant Chatmon, while pointing his gun at Plaintiff Fields, he reached for plaintiff Fields' cell phone held in his right hand.

See: attach # 1, Police Report Sworn Affidavit, pg. 1-A paragraph 10

52. However, Chatmon claimed that he was reaching for Plaintiff's arm, but it was the phone that he was actually after, due to the first and second encounter being filmed, Plaintiff had captured police misconduct without knowing it was going to get much worse.

See: Attachment # 1 Chatmon's Police Report Sworn Affidavit

Pg. 1-A Paragraph 12)

53. Defendant Chatmon, stated in his police Report Affidavit that he reached for plaintiff right hand to cuff him, however, the officer failed to tell plaintiff why? he was there, trying to hand cuff and/or arrest plaintiff in the first place, without probable cause.

(See: Attachment # 1 Police Report Sworn Affidavit Pg. 1-A Paragraph 12)

54. However, Plaintiff was unclear what? defendant Chatmon was doing, the officer was still pointing his gun, came closer to plaintiff, and physically tried to take plaintiff's cell phone out of his right hand, but was unsuccessful. *(Gram v. Connor, 490 U.S. 386(1989)*.

(See: attachment # 1 Pg. 1-A paragraph 12.

55. Plaintiff requested a Polk County Sheriff Deputy, and officer Chatmon said we have one around here on call.

56. However, Officer Chatmon continued to hold plaintiff at gun point, and he hesitated to call the sheriff immediately as plaintiff needed him too.

57. Plaintiff Fields was in fear, for his life, plaintiff said, I am going to call the

Sheriff out here myself.

58.    Defendant, Officer Chatmon then put away his Gun immediately, after Plaintiff said he was going to call the sheriff. *(Gram v. Connor, 490 U.S. 386(1989).*

See: Police Affidavit attachment # 1 Pg. 1-A paragraph 12.

59.    Before Plaintiff could dial the Sheriff's number to let someone know, that this officer was threatening his/my life with lethal force, by pointing his gun at me for no reason stated.

60.    Defendant officer Chatmon took out his taser, and quickly tased plaintiff, in the chest near the heart without provocation, warning, or probable cause. *(Gram v. Connor, 490 U.S. 386(1989).*

See: Police Affidavit attachment # 1 Pg. 1-A paragraph 12.

See: Deposition Transcript October 1, 2021 Pg. 11 Line 8-9

61.    Officer Chatmon Tased plaintiff, when no other officers, was present.

(See: Attachment # 1 Pg. 1-A Paragraph 11, Police Report Sworn

Affidavit

(See: Deposition Transcript October 1, 2021 Pg. 9 Line 6-9)

Deposition Transcript October 1, 2021 Pg. 13 Line 2-7)

62.    Defendant Chatmon tased plaintiff, he fell to the ground, and his phone to.

See: Attachment # .  .      .

63.    Officer Chatmon came, and buried his knee into plaintiff lower back injuring him, and he cuffed him for no reason known, or stated at that time. *(Reid v. Georgia 448 U.S.438(1980)*

10

64. Defendant Chatmon was deceptive, and acted with malice, after he picked up plaintiff's cell phone from the ground, he went to other officers after they arrived. Florida near Memorial Blvd., where plaintiff phone was viewed the first time without a warrant.

Deposition Transcript October 1, 2021 Pg. 9 Line 6-9)

Deposition Transcript October 1, 2021 Pg. 13 Line 2-7)

Deposition Transcript October 1, 2021 Pg. 9, Line 13-23.

(18 U S C. 1519 Evidence Tampering).

65. Defendant huddled together, with several other officers, and they viewed the content of plaintiff's cell phone video, without plaintiff's permission, or a search warrant, while plaintiff watched them do it.

See: Deposition Transcript October 1, 2021 Pg. 10, Line 1-17).

(18 U S C 1519 Evidence Tampering).

66. Plaintiff Fields, watched defendant Chatmon, a K-9 handler, without permission, or a searched warrant, seized, search, and ransacked Plaintiff's Vehicle without probable cause, near Salems Eats, from Memorial Blvd., on Florida Ave. (*Reid v. Georgia 448 U.S.438(1980)*

(See: Attachment # 66) Plaintiff's vehicle photos.

67. Defendant, Chatmon intentionally concealed facts that he failed to document, in the property section of the Police report, that he had seized, searched, ransacked, and impounded plaintiff Fields vehicle without permission, a search warrant, or probable cause.

(See: Attachment # 67 and # 67-A, Towing and Impound Receipts)

11

68.    Defendant Chatmon, had no warrant(s), no probable cause, to seized and search or tamper with plaintiff Fields cell phone video. (*Reid v. Georgia 448 U.S.438(1980) Supreme court.*

See: Deposition Transcript October 1, 2021 Pg. 9-16-23

Deposition Transcript October 1, 2021 Pg. 10 Line 3-17)

See: Hearing Transcript May 18, 2022, Pg. 4 Line 13-17

69.    The Second time plaintiff watched his phone being viewed was at the Lakeland Police Department.

See: Deposition Transcript October 1, 2021 Pg. 9 Line 16 -22.

See: Deposition Transcript October 1, 2021 Pg. 10 Line 6-8.

See: Deposition Transcript October 1, 2021 Pg. 10 Line 9-15.

70.    Officials came out side, of the Police Department, and viewed Plaintiff's phone evidence, it appeared to be a Lieutenant, three Sergeants, and several supervisors.

71.    After they viewed the footage, they walked around talking among themselves (*Reid v. Georgia 448 U.S.438(1980).* The below officer may, or may not be the same named officer Plaintiff saw. However,

(See: Deposition Transcript October 1, 2021, Pg. 8 Line 9-12);

Deposition Transcript October 1, 2021 Pg. 10, Line 6-8.

Deposition Transcript October 1, 2021, Pg. 12 line 10-17)

72.    Defendant Chatmon remained in his assigned truck, and the officials, they came out of the Police Department to his Truck and viewed the content on Plaintiff's phone evidence property, without a warrant. (*Reid v. Georgia 448 U.S.438(1980)*

73.    Plaintiff asked for his phone, the lieutenant laughed, and a female officer being one of those who viewed the phone evidence, without a warrant came near plaintiff, wagged his/my phone in his/my face, said oh, you mean this phone right here, she went back to Chatmon with the phone.

74.    Defendant Chatmon, or Lakeland Police Department, never returned plaintiff's stolen property phone evidence, since it was illegally seized on May 14, 2021.  Even a Court orders could not force the return plaintiff's stolen, phone property evidence.

> See evidence tampering, and concealment.  FL. Stat. 918.13
>
> See: Hearing Transcript July 8, 2022 Pg. 6 Line 21-24
>
> See: Hearing Transcript July 8, 2022 Pg. 9 Line 22-23
>
> See: Hearing Transcript July 8, 2022 Pg. 9 line 10-23.

75.    Officials concealed evidence saying that the phone was stored at Lakeland Police Department, however, phone evidence never materialized, Plaintiff's attorney requested several continuances, filed several motions, and the Court Orders were repeatedly disregarded.

> See: Attachment # 75; 75-A; 75-B, and 75-C, Motioned access to Evidence.
>
> See: Hearing Transcript December 8, 2021. Pg. 2 line 18-22.
>
> See: Hearing Transcript February 9, 2022. Pg. 3 line 19-25.
>
> Hearing Transcript February 9, 2022. Pg. 4 line2- 4.
>
> See: Hearing Transcript March 30, 2022 Pg. 3 line 14- 20.
>
> See: Hearing Transcript May 18, 2022 Pg. 3 line 16-19, and 20-25.
>
> Hearing Transcript May 18, 2022 Pg. 4 line 1-24; Pg. 5 line 1-24.

See: Hearing Transcript July 8, 2022 Pg. 9 line10-23.

76.    Defendant Chatmon delt deceitfully with Plaintiff as if he was a drug dealer, even though he was not.  Instead of the K-9 searching the exterior of Plaintiff's vehicle to alert, or hit on some illegal contraband, the officer illegally searched plaintiff's vehicle without a warrant.

See: attachment # 66; 66-A; 66-B

77.    Defendant Chatmon searched and seized plaintiff vehicle without a warrant, and they did not find anything illegal, they ransacked, caused damage, and disregarded the property damage, all while violating Plaintiff Fourth and Fourteenth Amendment Rights.

However, wrecker company photo's Attachment # 66, 66-A; 66-B.

78.    Defendant Chatmon after he took plaintiff's phone evidence property, he later stated that he did not need it, initially he said he took it for evidentiary purposes.

See: Deposition Transcript October 1, 2021 Pg. 10 Line 3.

79.    However, Plaintiff needed the exculpatory evidence, that captured defendant Chatmon committing egregious act of misconduct, that could have freed plaintiff before eighteen months.

(See: Deposition Transcript October 1, 2021 Pg. 9 line 16-23

(See: Deposition Transcript October 1, 2021 Pg. 10 line 3-4; 6-23)

(See: Deposition Transcript October 1, 2021 Pg. 10 line 9-15)

80.    Defendant Chatmon admits to taking plaintiff's phone for evidentiary purposes however, he took it at gun point, and tased plaintiff to get it, and searched it without a warrant, and no probable cause.

See: Attachment # 1 Police Report Sworn Affidavit Pg. 1-A paragraph # 10.

14

See: Attachment # 1 Police Report sworn affidavit Pg. 1- A, paragraph # 12.

See: Deposition Transcript October 1, 2021 Pg. 11 line 6-10)

81.    However, Assistant State Attorney Harold Bennett, knew Defendant Chatmon had tampered with evidence, and he failed to inform the Court that the officer took evidence to his home. The Court did not know the full story behind plaintiff's criminal case.

See: Hearing Transcript, December 8, 2021, Pg. 3 line 19-22.

See: Hearing Transcript, February 9, 2022, Pg. 3 line 13-23.

Hearing Transcript, February 9, 2022, Pg. 4 line, 2-4.

See: G.P.S. history time line. Attachment # 81; 81-A; 81-B, and 81C.

See: Hearing Transcript July 8, 2022 Pg. 9 Line 15-23)

82.    Plaintiff was taken to the Lakeland Police Department, and set hand cuffed outside, on the curb.

83.    EMS arrived and was allowed to snatch the taser tine out of his/my chest, leaving a hole, about one-half inch to three forth inch, in plaintiff chest, and left flesh still attached to the taser tine.

84.    Transport officer that initially took plaintiff to the Lakeland Police Department, and later to plaintiff to the Polk County jail, is the same person that gave plaintiff Fields, defendant Chatmon, name, because the arresting officer, never identify him-self to plaintiff.

(See: Deposition Transcript October 1, 2021 Pg. 11 line 20-23).

85.    Later during a deposition, Defendant Chatmon tried to act helpful, as if, trying to help provide information to plaintiff's attorney, about how? and where to possibly find camera footage, of the officer and plaintiff's Fields encounter(s).

(See: Deposition Transcript October 1, 2021 Pg. 15, and Pg., 16).

15

86.    Defendant Chatmon suggested, that plaintiff's attorney could possibly find camera footage, located near Florida, and Memorial BLVD., near Salems' Eats, that may have captured footage.

(See: Deposition Transcript October 1, 2021 pg. 15, and 16).

(See: Deposition Transcript October 1, 2021 Pg. 9 line 18-21

87.    However, Chatmon failed to mention that he had removed plaintiff's phone recorded evidence, on 5/14/2021 and he had already viewed the footage with others, and took it to his home at attachment 87-B.

See: Attachment # 87, 87-A; 87-B GPS Tracking History Timeline.

88.    However, Plaintiff's phone had captured the footage of defendant Chatmon, and Chatmon made no mention that plaintiff's phone camera had captured his interaction with plaintiff. That was needed by Plaintiff's attorney.

See: Deposition Transcript October 1, 2021. Pg. 9 line 1-5

Deposition Transcript: October 1, 2021 Pg., 9 Line 16-23),

Deposition Transcript: October 1, 2021 Pg. 10 line 2-20)

89.  Defendant Chatmon was the last known person in possession of plaintiff's phone evidence, see police affidavit report property summary of evidence

Attachment # 89; 89-A; 89-B; 89-C; 89-D, and 89-E, Police Report

Property Summary.

90.    Defendant Chatmon initially wrote in his police report sworn affidavit, first sentence, he said, "I was operating my black and white department (issued) Patrol Vehicle with red and blue lights affixed to the top, rear, side, and front of the vehicle". 837.021(1)(a) contradicting statement, below.

See: Attachment # 1 pg. 1, first paragraph, Police Report Sworn Affidavit

91.    However, the officer lied during the sworn deposition about the department issued vehicle that he was actually driving, when asked about the vehicle's dash-camera footage, he stated that he was not driving his assigned vehicle stated in the first paragraph of his Police Report Affidavit.

837.021(1)(a) Contradicting Statement with # 90 and 91.

See: Deposition Transcript October 1, 2021 Pg. 7 line 9-22

See: Deposition Transcript October 1, 2021 Pg. 15 and pg. 16

92.    During the sworn deposition the officer said that he was driving a loaner vehicle called a pool vehicle, not his actual department issued vehicle.  837.021(1)(a) FL. Statute contradiction.

(See: Deposition Transcript October 1, 2021, Pg. 7. Line 9-23).

Deposition Transcript. October 1. 2021, Pg. 15, line1-10).

93.    Defendant(s) officer Chatmon fraudulently fabricated, the police report sworn affidavit documents and issued it to the, Circuit Court and The State for them to continue maliciously prosecute plaintiff Fields illegally, and the State was doing just that.

94.    Defendant Chatmon forge investigative documents, and sent it to the Court's, for the State to continue maliciously prosecuting plaintiff.

See: Attachment # 94-C Discovery Exhibit contains fraudulent information,

At, Items on Property Receipts, Probable Cause Affidavit, Witnesses

Statement. Attachment # 94; 94-A; 94-B; 94-C, and 94-D.


See: Attachment # 95. Forged Notary Document payment request.

17

95.   Defendant Chatmon submitted a REQUEST FOR REIMBURSEMENT OF INVESTIGATIVE COSTS document.

Defendant Chatmon 262 was the Police Personnel Involved in this Investigation/Arrest.

96.   Defendant Police Officer Preston Chatmon # 262 notarized a fraudulent document.

97.   Chatmon Pretended to be a notary. Chatmon's printed affiant signature and Chatmon Swore under Oath, and notarized the fraudulent document, and sent it to the Court.

FL. Stat. 117.05(1) Stated it is against the law, for a notary to self-notarize.

See: Attachment # 95 Forged Notary document.

98.   The State Attorney nor defendant Chatmon had no probable cause, to charge plaintiff, the State Attorney's Office completely relied on Defendant officer Chatmon's fabricated police reports, and investigative documents that should never have been issued or accepted.

99.   Defendant's Police Sworn Affidavit, the officer stated that he gave clear lawful commands, however, Defendant Chatmon stated that plaintiff was yelling obscenities and arguing, Chatmon did not get a chance to tell him why he was stopped.

See: Attachment # 1, Pg. 1 A, paragraph 11,

See: Sworn Deposition October 1, 2021 Pg. 11, line 1-7.

FL. Statute: 837.021(1)(a) Conflicting Statement(s) at Pg.,101.

100.  Chatmon initial Police Report Sworn Affidavit the officer stated that he gave clear lawful commands, when in fact he did not have probable cause.

See: Deposition Transcript October 1, 2021 Pg. 10, line 24-25.

Deposition Transcript October 1, 2021 Pg. 11, line 1-7)

18

101. However, during the Sworn Deposition defendant Chatmon admits to not being able to tell plaintiff Fields the reason for their encounter.

See: FL. Statute 837.021(1)(a) conflicting statement(s) Pg. 99.

See: Sworn Deposition October 1, 2021 Pg. 11, line 1

102. Assistant State Attorney Harold Bennett, knew that Defendant Chatmon had tampered with evidence, and fabricated official reports, and Bennett failed to inform the Court that the officer took evidence to his home.

See: Hearing Transcript July 8, 2022 Pg. 5, Line 17-24.

G.P.S. History Tracking document was provided to Assistant State Attorney Harold, regarding Chatmon's evidence tampering.

103. Plaintiff phone GPS tracking history, shows plaintiff's cell phone was near Salem's Eats at 2:46 Am -3:24 AM, during second encounter.

See: Attachment # 87; 87-A; and 87-B.

104. Defendant officer Chatmon took plaintiff phone evidence to the Lakeland Police Department initially from 3:29 AM -5:05 AM.

See: Attachment # # 87; 87-A, and 87-B.

105. Plaintiff's GPS history, tracked plaintiff's cell phone, through Lakeland, from the Lakeland Police Department, 8.9 miles away, to Defendant Police Officer Chatmon's home, address at 3373 Mahagony Point Loop Lakeland Florida. On 5/14/2021 it arrived at 5:28 AM.

See: Attachment # 87-B, GPS phone Tracking History.

106. Plaintiff filed a motion for civil/contempt enforcement against State of Florida. Assistant State Attorney Harold V. Bennett failed, to comply with a contempt of court order, to produce the seized phone evidence, from Lakeland Police Department and he failed.

19

See: Attachment # 106 and 106-A.

107. On July 8, 2022 Plaintiff, had to became a Prose litigant, in order to defend Himself/Myself against the State.

See: Attachment # 107

108. The Court Directing the STATE.

See: Attachment # 108 and 108-A.

109. Plaintiff filed a motion for dismissal with prejudice against the State.

See: Attachment # 109; 109-A;109-B, and 109-C.

110. On October 18, 2022, after a false arrest, and being under eighteen months of the Malicious Prosecution, by the Florida State Attorney's Office,

Plaintiff's charges were dropped, by the Florida State Attorney's Office.

111. Stating, Due to New Facts, and Findings Discovered After, The Filing of The Information, Further Prosecution Is Not Warranted.

112. Signed by Harold V. Bennett, NOTICE OF NOLLE PROSEQUI.

See: Attachment # 112

## DAMAGES

113. As a direct and proximate result of the Defendants' violations of Plaintiff's federally protected rights, Plaintiff has suffered:

a) Pain and suffering;

b) Physical and mental injuries;

c) Pecuniary damages including past and future medical expenses;

d) Loss of enjoyment of life; and

e) Serious mental suffering and emotional distress.

20

114. Based on the intentional, and reckless misconduct, and Abuse of Power, Plaintiff requests an award of punitive damages against Defendants Chatmon.

COUNT 1
UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH
AMENDMENT–UNLAWFUL ARREST
42 U.S.C. § 1983
(Defendant Chatmon).

115. Defendants Chatmon arrested Plaintiff Fields, charged Plaintiff for driving reckless, eluding or attempting to elude, and resisting arrest without violence, without probable cause.

116. Defendants Chatmon, assumed, that because Plaintiff Fields was out and about at 2:15 A.M., that he was involved in an illegal transaction, when plaintiff Fields placed his personal information on the parked Semi Truck in a parking lot where other vehicles was for sale.

117. Defendants ignored the readily available exculpatory information, including plaintiff tried to get higher ranking officer(s) to go to the Semi Truck, to verify that nothing but his personal information was left on the Semi Truck.

118. Defendant(s) failed to abide by policy or procedure he was reckless, the officer fabricated documents in order to willfully falsely charged plaintiff without cause.

119. Defendant(s) were operating under color of state law when they arrested Plaintiff Fields falsely.

120. Defendants' false arrest deprived Plaintiff Fields of his property and his life and liberty, 14th Amendment Rights.

121. Defendants' false arrest was in reckless disregard of Plaintiff's rights.

COUNT 2
MALICIOUS PROSECUTION IN VIOLATION OF

21

THE FOURTH AMENDMENT 42 U.S.C. § 1983
(Defendant Chatmon)

122. On May 14, 2021, Defendant Chatmon, falsely charged Plaintiff Fields with the Florida State criminal offense of Driving Reckless at a high rate, and alluding or attempting to allude FL. Stat. § 316.192 1), (a).

123. defendant false, charge deprived Plaintiff Fields of his liberty Causing him to be jailed, on bond, and subjected him to eighteen months of continuous malicious prosecution, without probable cause.

124. Defendants were operating under the color of state law when they initiated the false charge against Plaintiff Fields.

125. Defendants charged Plaintiff Fields with driving at a high rate of speed, fleeing to allude, or attempt to allude, without probable cause to believe that Plaintiff Fields was guilty of these offenses.

126. Defendants recklessly or intentionally omitted material exculpatory information from the affidavit of probable cause, including Plaintiff absence indicating that plaintiff was not captured on dash cam or any device committing a crime.

127. Defendants intentionally or recklessly included false information in the sworn affidavit of probable cause by stating that plaintiff drove reckless, at a high rate of speed, fleeing or attempting to elude and resisting arrest without violence.

COUNT 3
- MUNICIPAL LIABILITY
(DEFENDANT CITY OF LAKELAND)

128. The violations of plaintiff's constitutional rights under the Fourth Amendment, to the United States Constitution, and the resulting damages, were directly and proximately caused by the actions and/or inactions of Lakeland Police Department, which has encouraged,

22

tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

a). Legal cause to stop, detain, arrest, and criminally charge a citizen.

b). The failure to provide any training whatsoever on how to recognize and understand how common police officers discriminate, profile, fabricate reports, file false charges, and destroy evidence that impact innocence people.

c). Failure to provide training on how to distinguish between a vehicle operator criminal, and reckless behavior, or a fabricated narrative.

d). The failure to provide training on how to use alternative methods or tools, such as emergency lights, dash camera, Radar Gun, and the Officer knowing the posted speeds limits.

e). Failure to provide any training on how to use alternative methods or tools, such as testing equipment before going on duty, and not creating false document.

129. Lakeland Police Department failure to train Police Officers on how to distinguish between reckless driving (speeding, unsafe travel, and lane change). You don't have to committed a crime, your life is still threatened, you are ticketed, arrested. The officer fabricates the police report, to assure the State Attorney continue to prosecute.

130. Additionally, Lakeland Police Department maintains a custom where officers are encouraged to approached, and intimidate people about providing their personal

identification, for reasons not articulated. When you ask questions trying to understand them, you are then charged with resisting arrest without violence, to create their probable cause.

## REQUEST FOR RELIEF

Based upon all the foregoing, Plaintiff Fields requests:

I. Process be issued and that each Defendant be required to respond within the time provided by the Florida Rules of Civil Procedure;

II. A jury be empaneled to try this case;

III. That a Declaratory Judgment be entered;

IV. That Plaintiff Fields be awarded nominal damages;

V. That Plaintiff Fields be awarded compensatory damages in the amount of Twenty Million Dollars;

VI. That Plaintiff Fields be awarded punitive damages against Defendant Preston Chatmon and the CITY OF LAKELAND PD in an amount deemed appropriate by a jury;

VII. That Plaintiff Fields be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

VIII. For pre- and post-judgment interest on all damages awarded;

IX. For such other, further, and general relief as the Court deems just and appropriate.


Respectfully submitted,

_____

DARELL L. FIELDS

P.O. Box 1428

Dundee, Florida 33838

863-852-4399

Dfields3176@gmail.com