# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DARRELL L. FIELDS,

     Plaintiff,

v.                           Case No. 8:25-cv-843-KKM-NHA

PRESTON G. CHATMON and
THE CITY OF LAKELAND
POLICE DEPARTMENT,

     Defendants.

_____

## ORDER

Preston Chatmon and the City of Lakeland[1] move to dismiss Darrell Fields's

§ 1983 action, which arises out of Fields's arrest and subsequent prosecution. Mot.

to Dismiss (MTD) (Doc. 4). For the reasons below, I grant the motion.

---

[1] The caption in Fields's complaint lists "The City of Lakeland Police Department" as the second defendant but his complaint elsewhere refers to the "City of Lakeland." *See, e.g.*, Compl. (Doc. 1) ¶ 7. The City joins Chatmon's motion to dismiss and argues that the Police Department is not a proper defendant. MTD at 1 n.1; *see Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit."); *Florida City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. 3d DCA 1995) ("Here, the plaintiff has sued the Police Department, which does not have the capacity to be sued."). Because pro se complaints are liberally construed, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), and the City provides a substantive response to Count III, *see* MTD at 14–17, I will address Fields's claim on the merits and refer to the second defendant as the "City of Lakeland."

## I.  BACKGROUND

Early in the morning on May 14, 2021, Fields was driving towards a restaurant. Compl. (Doc. 1) ¶¶ 8, 11. As Fields left a stop sign, Officer Chatmon pulled him over. *Id.* ¶¶ 12–15. Chatmon did not activate his emergency lights. *Id.* ¶ 12. Chatmon did not identify himself, nor did he inform Fields as to the legal basis for the stop. *Id.* ¶¶ 13, 16, 22, 26, 28–29, 36. So, after a brief conversation, Fields drove away. *Id.* ¶¶ 34–36, 41. According to Chatmon, Fields, in doing so, almost ran over Chatmon's right foot. *Id.* ¶ 37; *see* Arrest Aff. (Doc. 1-1 at 73–74) at 2. Fields alleges that this is a lie. Compl. ¶ 37.

As Fields drove away, Chatmon returned to his vehicle to follow. *See id.* ¶ 43. Chatmon eventually effectuated another stop. *Id.* ¶ 45. At the conclusion of this stop—which included an altercation between Fields and Chatmon that ended with the discharge of a taser—Chatmon arrested Fields. *Id.* ¶¶ 46–63, 115. Fields was then charged with fleeing or attempting to elude and resisting an officer without violence. *Id.* ¶¶ 23, 39; *see* (Doc. 1-1) at 75. Fields alleges that Chatmon fabricated parts of the police report and other documents that supported Fields's prosecution. *See, e.g.*, Compl. ¶¶ 93–98. After about eighteen months, the State Attorney's Office dismissed its case against Fields. *Id.* ¶ 110; *see* (Doc. 1-1) at 110.

2

Fields then filed this action against Chatmon and the City of Lakeland. *See* Compl. Fields brings false arrest and malicious prosecution claims against Chatmon and a municipal liability claim against the City. *Id.* ¶¶ 115–30.[2] The defendants move to dismiss Fields's complaint. MTD. Fields filed a belated response. Resp. (Doc. 7).[3]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at

---

[2] Fields references other potential claims in his response to the motion to dismiss. *See generally* Resp. (Doc. 7). In this order, I address only the claims that Fields has pleaded in the operative complaint.

[3] Fields also filed "half of an amended complaint." (Doc. 9); *see* (Doc. 8). I directed the Clerk to strike this filing because Fields "failed to comply with Federal Rule of Civil Procedure 15(a)(2)" and provided Fields with leave to amend no later than July 14, 2025. (Doc. 9). Fields failed to file a timely amended complaint.

555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"In analyzing the sufficiency of the complaint," I may consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544. The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III.   ANALYSIS

Chatmon argues that dismissal is warranted because he is entitled to qualified immunity. MTD at 5–14. The City argues that Fields fails to state a municipal liability claim under *Monell v. Department of Social Services,* 436 U.S. 658 (1978). MTD at 14–17. Finally, the defendants move to strike certain parts of Fields's

4

request for relief. *Id.* at 17–18. I first address Fields's claims against Chatmon and then turn to his claim against the City.

## A. Claims against Chatmon

Chatmon is entitled to qualified immunity with respect to both the false arrest and malicious prosecution claims.

### 1. Qualified Immunity

"The qualified immunity defense shields 'government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (omission adopted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"To receive qualified immunity, [a] public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

"To overcome a qualified immunity defense, the plaintiff must make two showings." *Corbitt*, 929 F.3d at 1311. The plaintiff must first show "that the defendant violated a constitutional right." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007). The plaintiff must then "show that the violation was clearly established." *Id.* "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Gilmore v. Georgia Dep't of Corr.*, No. 23-10343, --- F.4th ----, 2025 WL 1911728, at *8 (11th Cir. July 11, 2025) (en banc) (quotation omitted). For this second inquiry, the key question "is whether the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional." *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Ordinarily, "it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt*, 929 F.3d at 1311 (quoting *St. George v. Pinellas*

6

*County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* (quoting *St. George*, 285 F.3d at 1337).

### 2. Fields's False Arrest Claim is Dismissed

Fields claims that Chatmon violated the Fourth Amendment when he arrested Fields. Compl. ¶ 115. "To succeed on a false-arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). If an arrest is supported by probable cause or arguable probable cause, then a defendant is entitled to qualified immunity. *See Edger v. McCabe*, 84 F.4th 1230, 1236 (11th Cir. 2023); *Skop v. City of Atlanta*, 485 F.3d 1130, 1138 (11th Cir. 2007).

"Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010). Probable cause is "not a high bar," and requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quotations omitted). Arguable probable cause is an even lower bar. "An officer has *arguable* probable cause if 'a reasonable officer, looking at the entire legal

7

landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) (quoting *Wesby*, 583 U.S. at 68). And under the "any-crime rule," an officer is "insulate[d]" from a "false-arrest claim[] so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). In adjudicating a motion to dismiss, the question is whether, taking the complaint's allegations as true, the officer had probable cause or arguable probable cause based on the circumstances and the information the officer possessed. *See Gates v. Khokhar*, 884 F.3d 1290, 1297–1302 (11th Cir. 2018).

Chatmon is entitled to qualified immunity with respect to Fields's false arrest claim.

First, Chatmon was acting within his discretionary authority when he arrested Fields. *See Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) ("[I]t is clear that Trooper Kesler was acting within the course and scope of his discretionary authority when he charged and arrested Wood.").

Second, taking Fields's allegations as true, Chatmon had probable cause to arrest Fields for fleeing or attempting to elude a law enforcement officer. It follows

that Fields's arrest did not violate the Fourth Amendment. *See id.* at 878 ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest."); *Virginia v. Moore*, 553 U.S. 164, 176 (2008) ("[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution.").

The statute at issue makes it unlawful "for the operator of any vehicle, having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such order or, having stopped in knowing compliance with such order, willfully to flee in an attempt to elude the officer." § 316.1935(1), Fla. Stat. Fields alleges facts that support the requisite elements.

First, Fields alleges that he was operating a motor vehicle. Compl. ¶¶ 11–13.

Second, Fields alleges facts based on which Chatmon could have concluded that Fields knew he had been "ordered to stop [his] vehicle by a duly authorized law enforcement officer." § 316.1935(1), Fla. Stat. Although Fields alleges that Chatmon never turned on his emergency lights or identified himself, *see, e.g.*, Compl. ¶¶ 12, 16, Fields does not allege that Chatmon was not operating a patrol

vehicle.[4] Indeed, Fields himself assumed that he was stopped by a "police vehicle." *Id.* ¶ 19; *see id.* ¶ 43 (alleging that Chatmon operated a "Police K-9 vehicle"). Fields's interaction with Chatmon also provides an indication of the requisite knowledge. Chatmon asked for "insurance and registration"—a common request from law enforcement—and Fields in response asked Chatmon for the "probable cause" supporting his stop. *Id.* ¶¶ 26, 28. The fact that Fields allegedly told Chatmon he was "breaking the law" for not "telling [Fields]" the basis for his stop is evidence that Fields was aware of Chatmon's identity as a law enforcement officer. *Id.* ¶ 29. From this interaction, Chatmon could have reasonably believed that Fields knew he had been "ordered to stop [his] vehicle by a duly authorized law enforcement officer." § 316.1935(1), Fla. Stat.

Third, Fields alleges that, after Chatmon stopped him, Fields eventually drove off. *Id.* ¶¶ 34, 36, 41. Although Fields alleges that Chatmon "backed out from [Fields's] vehicle initially, and allowed [Fields] to drive off," *id.* ¶ 36, this allegation lacks the specificity needed to negate probable cause. For example, Fields does not

---

[4] Fields makes much of the fact that Chatmon claimed in his arrest affidavit that he was driving his issued vehicle but testified in his deposition that he was operating a loaner vehicle. Compl. ¶¶ 90–92. Chatmon does not explain how this is material to the probable cause analysis.

allege that Chatmon authorized Fields's departure. *See* MTD at 9 ("Plaintiff does not allege that Officer Chatmon actually told him he was free to leave."). Without such an allegation, I cannot conclude that Chatmon did not have probable cause. Also, the fact that Chatmon followed Fields casts doubt on the suggestion that Chatmon informed Fields that he could leave. Compl. ¶¶ 43, 45.

Taking these allegations together, I conclude that probable cause existed to stop and arrest Fields for fleeing or attempting to elude. As a result, Chatmon's seizure of Fields did not violate the Fourth Amendment, and he is entitled to qualified immunity. *See Moore*, 553 U.S. at 176; *Wood*, 323 F.3d at 878; *Skop*, 485 F.3d at 1138.

Fields makes much of the fact that Chatmon's initial stop was (allegedly) without probable cause. *See, e.g.*, Compl. ¶¶ 20, 26, 28. But the lack of justification for the initial stop is "irrelevant" for purposes of determining probable cause for a violation of § 316.1935(1). *Jackson v. State*, 463 So. 2d 372, 373 (Fla. 5th DCA 1985). Section 316.1935 "does not require lawfulness of the police action as an element of the offense." *Id.*; *see, e.g.*, *Ward v. State*, 59 So. 3d 1220, 1223 (Fla. 4th DCA 2011) (explaining that § 316.1935 does not require "the state to prove the validity of or show the reason for the original pursuit"); *State v. McCune*, 772 So. 2d

11

596, 597 (Fla. 5th DCA 2000) ("[R]egardless of the legality of the initial stop (or attempted stop), the statutory offense of fleeing and eluding does not require the lawfulness of the police action as an element of the offense."). Therefore, even assuming Chatmon's initial stop was unlawful, this does not negate probable cause.

Fields also asserts that Chatmon ignored "readily available exculpatory information." Compl. ¶ 117. But Fields alleges none, so this conclusion without factual allegation does not make it plausible that Chatmon lacked probable cause for the offense of fleeing or attempting to elude.

For these reasons, a reasonable officer "could conclude . . . that there was a 'substantial chance of criminal activity.' " *Wesby*, 583 U.S. at 61 (quoting *Illinois v. Gates*, 462 U.S. 213, 23 n.13 (1983)). Therefore, Chatmon had probable cause to arrest Fields for fleeing or attempting to elude. At the very least, arguable probable cause existed, for "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrest[] here." *Id.* at 68. Either way, Chatmon is entitled to qualified immunity, and Count I must be dismissed.[5]

---

[5] Chatmon also argues that additional probable cause existed to arrest Fields for resisting without violence. MTD at 10–11. I need not address that argument with respect to Fields's

### 3. Fields's Malicious Prosecution Claim is Dismissed

To succeed on a malicious prosecution claim, a plaintiff must prove both "(1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018). "[T]he constituent elements of the common law tort of malicious prosecution include[ ]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (alterations in the original) (quoting *Wood*, 323 F.3d at 882). The Eleventh Circuit has recently simplified the malicious prosecution standard to three elements: (1) "the legal process justifying [the plaintiff's] seizure was constitutionally infirm"; (2) the "seizure would not otherwise be justified without legal process"; and (3) "the criminal proceedings against [the plaintiff] terminated in his favor." *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1329 (11th Cir. 2024) (alterations in the original) (quoting *Luke*

---

false arrest claim in the light of my conclusion that probable cause, or arguable probable cause, existed to support Chatmon's decision to arrest Fields for fleeing or attempting to elude.

*v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020)). As should be evident, a malicious prosecution claim "requires a seizure 'pursuant to legal process.'" *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)).

Like with a false arrest claim, the existence of probable cause or arguable probable cause triggers the application of qualified immunity for a malicious prosecution claim. *See Sylvester*, 94 F.4th at 1331. But the inquiry is different. With respect to malicious prosecution, the probable cause inquiry focuses on "the legal process that justified the plaintiff's arrest and the defendant's role in that process." *Id.* at 1330. Therefore, the proper analysis requires a court to "remove from the affidavit any false or misleading inculpatory statements, insert any omitted exculpatory information, and then assess whether the corrected affidavit is still able to establish at least arguable probable cause." *Id.* at 1331.[6]

_____

[6] Under the Eleventh Circuit's simplified articulation of the elements of malicious prosecution, this inquiry informs whether the "the legal process justifying [the plaintiff's] seizure was constitutionally infirm." *Sylvester*, 94 F.4th at 1329 (alteration in the original) (quoting *Luke*, 975 F.3d at 1144). If the plaintiff plausibly alleges that the affidavit's inaccuracies and omissions were material, he must also allege facts that make it plausible "that the inaccuracies in the affidavit did not result from a 'reasonable mistake' but stemmed from intentional or reckless deception." *Id.* at 1330 (quoting *Williams*, 965 F.3d at 1165–66).

Chatmon argues that Fields fails to plausibly allege malicious prosecution because Fields fails to plead any seizure pursuant to legal process. MTD at 13. Chatmon also argues that, even after removing the alleged falsehoods, the arrest affidavit still establishes probable cause for Fields's charges of fleeing or attempting to elude and resisting an officer without violence. *Id.* at 13–14. I agree with both arguments.

As discussed, malicious prosecution "requires a seizure 'pursuant to legal process.' " *Williams*, 965 F.3d at 1158 (quoting *Black*, 811 F.3d at 1267). "[W]arrant-based seizures fall within this category," as do "seizures following an arraignment, indictment, or probable-cause hearing." *Id.* But in his complaint, Fields alleges no such seizure. Fields does not allege that his arrest was pursuant to a warrant, *see* Compl. ¶ 115, and a warrantless arrest is the quintessential seizure "without legal process," *Williams*, 965 F.3d at 1158; *see Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004); *Donley v. City of Morrow*, 601 F. App'x 805, 814 (11th Cir. 2015) (per curiam). Although Fields alleges that Chatmon's false charges "[c]aus[ed] him to be jailed," Compl. ¶¶ 122–23, this allegation refers to Chatmon's arrest affidavit, Arrest Aff., not the criminal information that followed, *see* (Doc. 1-1) at 75. And Fields's barebones allegation that he was "on bond" before

15

the termination of his prosecution is also insufficient under Eleventh Circuit precedent. Compl. ¶ 123; *see Kingsland*, 382 F.3d at 1236 (refusing to conclude that "normal conditions of pretrial release" constitutes a Fourth Amendment seizure absent some "significant deprivation of liberty"). Accordingly, Fields fails to plausibly allege malicious prosecution.

Even if Fields alleged a seizure pursuant to legal process, he fails to plausibly allege a lack of probable cause for the charged offenses of fleeing or attempting to elude and resisting an officer without violence. As addressed above, a person operating a vehicle flees or attempts to elude a law enforcement officer in violation of § 316.1935(1) when he (1) has "knowledge" that he "has been ordered to stop such vehicle by a duly authorized law enforcement officer" and (2) "having stopped in knowing compliance with such order," willfully "flee[s] in an attempt to elude the officer." A person resists an officer without violence in violation of § 843.02, Florida Statutes, when (1) "the officer was engaged in the lawful execution of a legal duty"; and (2) "the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009) (per curiam).

16

Fields asserts the following falsities in Chatmon's arrest affidavit: (1) Chatmon never pursued Fields in a high-speed chase and Fields did not recklessly speed before the first stop, Compl. ¶¶ 24, 30, 32, 127;[7] (2) Fields never came close to running over Chatmon's right foot and never attempted battery on Chatmon, *id.* ¶¶ 37–38; (3) Fields was not walking toward Chatmon during the second stop, *id.* ¶ 47; (4) Chatmon was reaching for Fields's phone, not Fields's hand, during the second stop when Chatmon was attempting to arrest Fields, *id.* ¶ 52; (5) Chatmon was not driving his assigned vehicle on the night at issue but was instead operating a loaner vehicle, *id.* ¶¶ 90–92; and (6) Chatmon did not give clear lawful commands during their interactions, *id.* ¶¶ 99–101.[8]

An affidavit corrected for these alleged errors is still able "to establish probable cause for the crime[s] charged," and thus the legal process justifying Fields's seizure

---

[7] Fields also alleges that Chatmon falsely wrote that Fields "committed the offense(s) of Fleeing and Attempted to Elude, Reckless-High Speed, and Resist Officer without violence." Compl. ¶ 23. But this is a legal conclusion, not a false statement of fact. *See Sylvester*, 94 F.4th at 1331 (considering the "statement[s] of fact" in the affidavit).

[8] Fields also alleges that the affidavit omitted "material exculpatory information from the affidavit of probable cause," including the fact that Fields "was not captured on dash cam or any device committing a crime." Compl. ¶ 126. Fields does not explain how, if included, this information would negate probable cause.

(again, assuming there was a seizure pursuant to legal process) was not constitutionally infirm. *Sylvester*, 94 F.4th at 1330. Chatmon's first alleged false statement—that Fields was speeding before Chatmon pulled him over the first time—is irrelevant to the probable cause inquiry for the offense of fleeing or attempting to elude.[9] Even if Chatmon's initial stop was without legal justification, Fields's departure from the scene provides a basis for a reasonable officer to conclude that Fields was fleeing or attempting to elude a law enforcement officer in violation of § 316.1935(1), Florida Statutes. *See supra* at 11–12. Therefore, Chatmon's attempt to detain Fields during the second stop still qualifies as the lawful execution of a legal duty, *see M.J. v. State*, 67 So. 3d 1189, 1190 (Fla. 3d DCA 2011) ("The element of lawful execution of a legal duty is satisfied if an officer has either a founded suspicion to stop the person or probable cause to make a warrantless arrest."), and Fields's resistance provides the probable cause needed for the charge of resisting an officer without violence, *see C.E.L.*, 24 So. 3d at 1185.

---

[9] Even assuming Fields's allegation is that he was not speeding between the first stop and the second, reckless driving is not an element of fleeing or attempting to elude. *See Manners v. Cannella*, 891 F.3d 959, 971 (11th Cir. 2018) ("Florida's courts have found probable cause for the offense of fleeing or attempting to elude a law enforcement officer in the absence of lengthy flight and without a high-speed getaway.").

18

Chatmon's second alleged false statement—that Fields almost ran over his right foot—is also not material to the charged offenses. Even if Chatmon was lying, attempted violence toward a law enforcement officer is not an element of either charged offense, and as Fields acknowledges, the State never charged him with attempted battery or assault on a law enforcement officer. *See* Compl. ¶¶ 38–39.

Chatmon's third alleged false statement—that Fields walked toward him during the second stop—similarly does not undermine probable cause. Although this representation in Chatmon's report helps explain Chatmon's actions, it does not form the basis for either charged offense. In other words, it makes no difference whether Fields was walking toward Chatmon or standing still when Chatmon attempted to detain him.

Chatmon's fourth alleged false statement—that he was reaching for Fields's arm when he actually sought Fields's phone—also fails to undercut probable cause. Regardless of whether Chatmon was reaching for Fields's phone or his arm, Fields does not dispute in his complaint that this act was in the context of Chatmon's attempt to detain Fields. *See* Compl. ¶¶ 52–54.[10] Nor does Fields dispute that he

---

[10] In his response to Chatmon's motion, Fields argues that Chatmon "reached for [his] hand," but "not because he was trying to subdue or take control of Fields." Resp. at 3; *see*

resisted Chatmon's attempt. *See id.* ¶ 54 (alleging that Chatmon's attempt was "unsuccessful"); Arrest Aff. at 2 ("I attempted to guide [Fields] onto the ground by grabbing his right wrist with my left hand while informing him he was under arrest. [Fields] snatched his wrist out of my grasp and backed away from me."). Accordingly, even if Chatmon desired to seize Fields's phone, a reasonable officer reading Chatmon's affidavit with this correction could still conclude that probable cause was present.

Chatmon's fifth alleged false statement—that he was driving his own police vehicle rather than a loaner police vehicle—is irrelevant to the probable cause determination. Even if Chatmon's affidavit stated that he was driving a police vehicle other than his own, probable cause would remain for Fields's charges. Fields does not provide any reason to conclude otherwise.

Chatmon's sixth and final alleged false statement is that, during the second stop, he gave Fields "loud and clear verbal commands." Arrest Aff. at 2. Fields alleges

---

*also id.* at 4 ("[Chatmon] never told [Fields] you are being detained, or you are under arrest, or put the phone down, and put your hands behind your back, [Fields] was not detained." (cleaned up)). But Fields cannot add allegations through briefing. *See Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016) ("[F]acts contained in a motion or brief 'cannot substitute for missing allegations in the complaint.'" (quoting *Kedzierski v. Kedzierski*, 899 F.2d 681, 684 (7th Cir. 1990))).

that this is false because Chatmon never identified a lawful basis for the second stop. *See* Compl. ¶¶ 99–101. This discrepancy—assuming there is one—between what happened and what Chatmon represented in his affidavit, is not relevant to the probable cause analysis. Although, for the purposes of the resistance charge, Chatmon's attempt to arrest Fields must have been "consistent with the Fourth Amendment and any other relevant requirements of law," *C.E.L. v. State*, 995 So. 2d 558, 560 (Fla. 2d DCA 2008), the Supreme Court has never held that an officer is "constitutionally required" to "inform a person of the reason for his arrest at the time he is taken into custody," *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004). Therefore, even if Chatmon's affidavit included the fact that he never informed Fields of the reason for the traffic stop and his subsequent arrest (or omitted the part about "loud and verbal commands"), a reasonable officer could still have concluded that probable cause existed to charge Fields for the listed offenses.

In sum, even after correcting for the alleged errors, Chatmon's affidavit provides for the necessary probable cause. At the very least, the "affidavit is still able to establish at least arguable probable cause" for the charged offenses. *Sylvester*, 94 F.4th at 1331.

Accordingly, Chatmon is entitled to qualified immunity and Count II must be dismissed.[11]

## B. Field's Municipal Liability Claim is Dismissed

Fields alleges that Chatmon's violation of Fields's Fourth Amendment rights and the resulting damages were caused by the actions and inactions of the Lakeland Police Department. Compl. ¶ 128. A municipality "does not incur § 1983 liability for injuries caused solely by its employees." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Instead, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.*

In the light of my conclusion that Chatmon did not violate Fields's constitutional rights, Fields's municipal liability claim must be dismissed. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024) ("[B]ecause no constitutional violation occurred, [the plaintiff] cannot succeed on his *Monell* claim against the City.").

---

[11] Like with the false arrest claim, there is no dispute that Chatmon's authorship of the affidavit occurred within the scope of his discretionary authority. *See supra* at 8.

## IV.    CONCLUSION

Accordingly, it is **ORDERED** that the Motion to Dismiss (Doc. 4) is **GRANTED**. Fields failed, under a previous order, to file an amended complaint. *See* (Doc. 9). But because Fields is proceeding pro se, he may have a chance to amend one more time. If Fields elects to do so, he must file the amended complaint no later than **August 21, 2025**. Failure to comply with this order will result in dismissal of the action.

**ORDERED** in Tampa, Florida, on August 7, 2025.

Kathryn Kimball Mizelle
United States District Judge